IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDWARD M. QUINTANA,

      Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　No. 13-cv-1019 SMV

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 22] ("Motion"), filed on April 4, 2014. The Commissioner responded on May 30, 2014. [Doc. 23]. Plaintiff elected not to reply. *See* [Doc. 24]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 11]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Motion is not well-taken and should be denied.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity;" *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on September 24, 2009. Tr. 15. Plaintiff alleged disability primarily due to injuries suffered in February of 1997, when he was beaten with a baseball bat and run over by a vehicle. [Doc. 22] at 3. Although the injuries occurred in 1997, he alleged a disability-onset date of February 1, 2009. Tr. 15. His claims were denied initially and on

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

reconsideration.  *Id.*  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.*  ALJ Barry O'Melinn held a hearing on June 14, 2012, in Albuquerque, New Mexico.  *Id.*  Plaintiff appeared in person with his attorney, Gary Martone.  *Id.*  The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Thomas A. Greiner.  Tr. 15, 49–56.

The ALJ issued his unfavorable decision on August 6, 2012.  Tr. 15–24.  At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 17.  Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two.  *Id.*  There, he found that Plaintiff suffered from the following severe impairments:  "status post closed head injury and borderline intellectual functioning."  Tr. 17.  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 17–19.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC.  Tr. 19–22.  The ALJ found that

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [he] can never climb ladders, ropes[,] or scaffolding[] and must avoid hazardous machinery[] and heights.  [Plaintiff] can understand, carry ou[t,] and remember simple instructions[;] make simple work related decision[s;] respond appropriately to supervision[] and co-workers[;] deal with routine changes in the work setting[; and] can maintain concentration[], persistence, and pace for up to and including 2[ ]hours at a time, with normal breaks throughout the work day.

Tr. 19.  At step four, the ALJ found that Plaintiff could not return to any of his past relevant work.  Tr. 22–23.

4

At step five, based on Plaintiff's RFC, age, education, and work experience, as well as the testimony from the VE, the ALJ found that Plaintiff was able to perform other jobs that exist in significant numbers in the national economy. Tr. 23–24. Specifically, he found that Plaintiff was able to perform the requirements of Inspector/Tester (Dictionary of Occupational Titles ("DOT") number 809.687-018) and Water Leak Repairer (DOT number 809.687-018). *Id.* The ALJ acknowledged that the DOT lists these jobs as having specific vocational preparation ("SVP") levels of three, which indicate that they are "semi-skilled" and therefore inconsistent with the RFC of "unskilled" or simple.[3] Tr. 23. The ALJ then went on to resolve the conflict. *Id.* Based on the VE's "extensive training and experience," the ALJ was persuaded by the VE's testimony that such jobs were "simple enough" to be consistent with the RFC, especially the inspector/tester job, which requires "repetitive short-cycle work." *Id.*

Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and he denied the claims. *Id.* The Appeals Council denied Plaintiff's request for review on September 6, 2013. Tr. 1−3. Plaintiff timely filed the instant action on October 22, 2013. [Doc. 1].

## Analysis

Plaintiff's arguments are not persuasive. The Court finds no error in the ALJ's rejection of the psychological opinion of consultative examiner Eligio R. Padilla, Ph.D., or in the ALJ's

---

[3] *See generally* SSR 96-9p, 1996 WL 374185 at *9 (equating a limitation of simple work-related decisions to unskilled work); SSR 00-4p, 2000 WL 1898704 at *3 ("The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 [C.F.R. §§] 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4[.]").

findings at step five.  Plaintiff's other arguments are either without merit or insufficiently developed for review.  Accordingly, the Motion will be denied.

> I.   The ALJ applied the proper legal standards in evaluating Dr. Padilla's opinion, and the ALJ's reasons for rejecting the opinion are supported by substantial evidence.

Plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 96-8p in assigning "very little weight" to Dr. Padilla's opinion and thereby declining to include Dr. Padilla's assessed limitations in the RFC.  [Doc. 22] at 5–7 (citing Tr. 22).  Plaintiff explains that SSR 96-8 requires ALJs to consider and address all medical opinions when formulating an RFC analysis and, if an opinion was not adopted, to explain why.  *Id.* at 5.

Here, however, the ALJ considered and addressed Dr. Padilla's opinion and explained why he was rejecting it.  Tr. 22.  The ALJ found that Dr. Padilla's assessed limitations were not consistent with Plaintiff's "long-term demonstrated ability to work."  *Id.*  Additionally, because the ALJ determined that Plaintiff was not credible, the ALJ consequently found Dr. Padilla's opinion, which was based on Plaintiff's own reported symptoms, to be "fundamentally flawed." Tr. 22.

Citing *Thomas v. Barnhart*, 147 F. App'x 755, 759–60 (10th Cir. 2005) (unpublished), Plaintiff argues that "the ALJ was incorrect to disregard Dr. Padilla's opinion because it was based on Mr. Quintana's allegations."  [Doc. 22] at 6.  In *Thomas*, the Tenth Circuit Court of Appeals found that it was error for an ALJ to reject a psychological opinion merely because it was not based on objective tests.  147 F. App'x at 759.  The court explained that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.  A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest

6

either on observed signs and symptoms or on psychological tests.'" *Id.* (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).  The instant case, however, is distinguishable.

Here, the ALJ did not reject Dr. Padilla's opinion because it lacked objective support. The ALJ rejected Dr. Padilla's opinion, in part, because it was based on Plaintiff's self-reported symptoms and history, which the ALJ expressly and carefully found to be incredible. Tr. 21−22.  The ALJ found Plaintiff's reports regarding his criminal history to be "highly unbelievable," and he closely and affirmatively linked that finding to the substantial evidence of record.  *Id.*  More to the point, the ALJ found that Plaintiff was not credible with respect to his self-reported symptoms.  For example, the ALJ found that Plaintiff's subjective complaints of extreme symptoms—forgetting where he is, sleeping for two or three days, severe interpersonal problems, and ongoing severe headaches—were not consistent with Plaintiff's lack of treatment.  Tr. 21.  The ALJ explained that he would expect someone with such severe symptoms to have sought emergency or subsidized care.  *Id.*  He further found these symptoms and Plaintiff's reports of inability to read and write to lack credibility because of Plaintiff's work history "before and well after the [1997] head injury," including some work responsibilities as "lead man and superintendent a few times."  Tr. 22.  These credibility findings—which Plaintiff does not challenge—are supported by substantial evidence.  *See* Tr. 39, 43–45 (Plaintiff's testimony that he worked after the 1997 injury until 2003, when he became incarcerated for about two or three years, and that he had worked as a "lead man and a superintendent").  Accordingly, the Court finds that the ALJ applied the correct legal standards

in evaluating Dr. Padilla's opinion and that the ALJ's reasons for the rejecting the opinion are supported by substantial evidence.

## II. The ALJ did not commit error at step five.

Plaintiff's argument regarding step five is that the ALJ's resolution of the conflict between the VE's testimony and the DOT is insufficient. [Doc. 22] at 7–8, 10. Before relying on a VE's testimony to support a finding of non-disability, an ALJ must resolve any conflict between such testimony and the DOT. SSR 00-4p, 2000 WL 1898704 at *4. For example, a VE may explain that his testimony is based on his professional placement or counseling experience, and if an ALJ finds that testimony convincing, the testimony may constitute substantial evidence to support the ALJ's decision. *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished). "Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof." *Id.* (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993); 20 C.F.R. § 404.1566(e) (contemplating the use of vocational experts in determining complex issues concerning the characteristics of specific occupations); SSR 00-4p, 2000 WL 1898704 at *2 (noting that information about job requirements not listed in the DOT may come from a VE's experience in job placement or career counseling)).

At the hearing, the ALJ specifically asked the VE about an apparent conflict between jobs cited by the VE (which have SVP levels of three and, thus, are semi-skilled) and his

8

hypothetical question (reflecting an RFC limited to simple or unskilled work).  Tr. 51.  The VE explained that the jobs were "simple enough" to be consistent with the hypothetical (and thus also the RFC), especially inspector/tester, which requires "repetitive short-cycle work."  *Id.*  In his decision, the ALJ expressly relied on that testimony to resolve the conflict.  Tr. 23–24.  The ALJ found that the VE "has extensive training and experience in this area[, and he found] his answers convincing."  Tr. 24.

Plaintiff challenges the ALJ's reliance on the VE's testimony that the jobs are "simple enough" to be consistent with the hypothetical (and the RFC).  [Doc. 22] at 8.  Plaintiff argues that because, according to the DOT, "[t]he inspector and tester occupation . . . requires testing to ensure alignment and dimensions and looking for irregularities[, and because the] water leak repairer . . . requires detecting leaks and correcting irregularities that cause leaks," the jobs cannot be simple enough to comport with the hypothetical (and RFC).  *Id.*  However, as the Commissioner correctly points out, Plaintiff offers no authority to support his argument that the ALJ erred in relying on the VE's expertise.  Besides, it is not the role of this court to reweigh the evidence or to evaluate the credibility of the VE.  *See Flaherty*, 515 F.3d at 1070.  Rather, this Court is tasked with evaluating whether the ALJ applied the correct legal standards and whether his findings are supported by substantial evidence.  The Court finds no error.  The ALJ applied the correct legal standards when he recognized and explained the conflict between the VE's testimony and the DOT.  Tr. 23–24; *see* SSR 00-4p, 2000 WL 1898704 at *4.  Moreover, the Court finds that the ALJ's basis for resolving the conflict is supported by substantial evidence, i.e., the VE's testimony.  *Id.*; Tr. 49−51.

Plaintiff also argues that the ALJ erred in finding that Plaintiff had acquired certain transferrable skills. [Doc. 22] at 8–9. The Court is not persuaded. The ALJ, in fact, expressly stated that transferability of skills was "not material to the determination of disability." Tr. 23. Although the VE discussed certain skills that he believed Plaintiff had acquired and were transferrable, the ALJ did not rely on that testimony. Tr. 23. Instead, the ALJ expressly found that the jobs cited by the VE were consistent with his hypothetical (and RFC) reflecting simple (or unskilled) work. *Id.* at 23–24. Accordingly, the transferability of skills is irrelevant.

Plaintiff also argues that the ALJ erred at step five because he failed to apply the factors outlined in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), to determine whether the jobs cited at step five exist in significant numbers. [Doc. 22] at 9. When an ALJ determines whether work exists in significant numbers, he may consider many criteria, "some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330.

In this case at step five, as Plaintiff correctly notes, the ALJ found that 65,000 jobs exist nationally. *Id.* Plaintiff does not challenge that number as nationally insignificant. *Id.* Rather, he argues that the number is in a "gray area," and therefore, the ALJ erred in failing to apply the *Trimiar* factors. *Id.* The Court is not persuaded. First, Plaintiff fails to show that the ALJ committed reversible error when he failed to examine the *Trimiar* factors (assuming that he, indeed, failed to examine the factors, which the Court does not necessarily find). More to the

point, Plaintiff does not argue that the step-five jobs exist in nationally insignificant numbers. *See* [Doc. 22] at 9−10.  Accordingly, the Court declines to remand on this ground.  *See Botello v. Astrue*, 376 F. App'x 847, 851 (10th Cir. 2010) (unpublished) (declining to remand where the plaintiff did not argue that 67,250 step-five jobs was a nationally insignificant number).

Finally, Plaintiff mentions that the ALJ "failed to have the VE specify the learning time for the two occupations . . . and failed to identify the two occupations as unskilled." [Doc. 22] at 10.  Plaintiff also mentions that the ALJ "fail[ed] to cogently give findings of fact and the reasons for his decision as required by 20 C.F.R. §§ 404.953(a) and 416.1453(a)[.]"  *Id.* at 10−11.  To the extent that these points are not already addressed herein, Plaintiff falls short of developing them as arguments.  The Court, therefore, rejects them.  *See, e.g.*, *United States v. De Vaughn*, 694 F.3d 1141, 1155 n.9 (10th Cir. 2012) ("The court will not consider issue[s] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (internal quotation marks omitted); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("[Plaintiff] presents a number of subissues and arguments, many of them poorly developed.  [The court] will consider and discuss only those of her contentions that have been adequately briefed for . . . review.").

## Conclusion

Because Plaintiff fails to meet his burden before this Court to show either that the ALJ applied an incorrect legal standard or that his decision was not supported by substantial evidence, the Commissioner's final decision should be affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 22] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**